(No. 62537.—

DONALD A. STATLAND, Petitioner, v. CHARLES E. FREEMAN, Judge, *et al.*, Respondents.

*Opinion filed May 21, 1986.*

SIMON, J., took no part.

Edward Slovick and James S. Gordon, of Chicago, for petitioner.

James P. Chapman and Kathleen Hogan Morrison, of James P. Chapman & Associates, Ltd., of Chicago, for respondents Burton W. Kanter, Roger S. Baskes, Alan H. Hammerman and Elliot G. Steinberg.

Bruce S. Sperling and Mitchell H. Macknin, of Sperling, Slater & Spitz, of Chicago, for respondents Milton A. Levenfeld, Charles A. Lippitz, Calvin Eisenberg and Richard K. Janger.

JUSTICE WARD delivered the opinion of the court:

Donald A. Statland filed a motion in this court under Supreme Court Rule 383 (94 Ill. 2d R. 383) for a supervisory order to vacate a protective order entered by the circuit court of Cook County. Charles E. Freeman, circuit judge of Cook County, Milton A. Levenfeld, Burton W. Kanter, Roger S. Baskes, Charles A. Lippitz, Calvin Eisenberg, Richard K. Janger, Alan H. Hammerman, Elliot G. Steinberg, Cablevision Company, and Charles F. Dolan were named as respondents.

Levenfeld, Kanter, Baskes, Lippitz, Eisenberg, Janger, Hammerman and Steinberg are former law partners of Statland and are defendants in a suit brought by Statland for an accounting of profits of the partnership. In the complaint for accounting Statland alleged that the law firm rendered legal services for respondent Cablevision when Cablevision consisted of two limited partnerships, and that the law firm received shares in the partnerships as compensation for professional services. He alleged that he was entitled to but did not receive a *pro*

*rata* portion of the partnerships' shares acquired by the law firm. Four of the respondents sold their shares in 1982 for $8.8 million; the remaining law firm respondents have been offered $16 million for their shares. The discovery in the suit has produced over 1,200 documents consisting of various financial records, including the purchase and sale records of the pre-Cablevision partnership interests, ownership records, and records of negotiations concerning the partnerships and legal fees paid by the partnerships. When discovery was completed, Statland stated to the defendants that, if it became necessary, he would use these documents in an ongoing Internal Revenue Service investigation involving, he said, his own tax liability. The defendants then moved the trial court for a protective order to prevent the documents from being used outside of the suit between the parties. The defendants argued that there had been an agreement between the parties that the discovered financial information would not be used outside of that litigation. The circuit court first denied the motion, but following hearing on a "renewal" of the motion, the court allowed the motion for a protective order.

The writ of *mandamus* is an extraordinary remedy, and the writ will not lie under ordinary circumstances to regulate discovery or even to correct abuses of discretion by trial courts in matters of discovery. (*Owen v. Mann* (1985), 105 Ill. 2d 525, 530-31; *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 188-89.) Similarly, this court will not exercise its supervisory authority save under exceptional circumstances. In *People ex rel. Carey v. Strayhorn* (1975), 61 Ill. 2d 85, this court did exercise supervisory powers to vacate a discovery order after the trial court had applied a discovery provision in the Code of Criminal Procedure of 1963 that conflicted with Supreme Court Rule 413. This court declared the statutory provision invalid and directed the trial court to reconsider the

discovery motion in that light.

*Marshall v. Elward* (1980), 78 Ill. 2d 366, involved a suit under the Structural Work Act. The trial court had ordered the Occupational Safety and Health Administration (OSHA) to produce certain materials acquired or prepared in its investigation of a construction accident that was the subject of the suit. The United States Secretary of Labor sought a writ of *mandamus* to expunge the order of the trial court, claiming that, based on the sovereign immunity of the United States and the supremacy clause of the United States Constitution, the records were not subject to production. This court held that the issuance of the order was within the jurisdiction of the trial court, and it denied the petition for *mandamus*. But as the trial court apparently had failed to apply the federally codified "investigatory file privilege" and "informer's privilege" in regard to the Federal documents, this court, under its supervisory powers, directed the trial court to examine the documents to determine which were subject to those privileges.

Another decision in which this court exercised its supervisory authority was *Balciunas v. Duff* (1983), 94 Ill. 2d 176. There the trial judge, having succeeded another judge as the motion judge for the circuit court, entertained a motion to reconsider a discovery order of the predecessor judge and then modified the order. The *Balciunas* court held that the trial judge should not have exercised independent discretion and revised a ruling of the other judge without a compelling reason, such as a change in relevant circumstances. The court said, "once the court has exercised its discretion, that ruling should not be reversed by another member of the court simply because there is disagreement on the manner in which that discretion was exercised." (94 Ill. 2d 176, 188.) The court refused a writ of *mandamus* but under its supervisory authority vacated the trial court's order and di-

rected the judge to reconsider his order in light of this court's holding.

The plaintiff argues that this is an instance where we should exercise our supervisory authority, because the trial court failed to comply with Supreme Rule 201 (87 Ill. 2d R. 201). He contends that under the rule the defendants were required to allege any facts showing that the entering of a protective order was necessary. The contention, however, is in disregard of the language of the rule. Rule 201(c)(1) provides:

> "*Protective Orders.* The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." (87 Ill. 2d R. 201(c)(1).)

Rule 201(c)(1) does not set out any specific requirements for protective orders. There is only the broad standard "as justice requires." The committee comments to Rule 201 note that subparagraph (c)(1) provides for "broad discretion to make protective orders." Here, the trial court was informed of the nature of the discovered material, and that the plaintiff intended to use it in another proceeding. On this record it cannot be said that the order was improperly entered, and there is no showing of circumstances which would warrant the exercise by this court of its supervisory authority.

Citing *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199, the petitioner makes the claim too that the protective order violates a right of access to information under the first amendment of the United States Constitution and article I of the Constitution of Illinois (U.S. Const., amend. I; Ill. Const. 1970, art. I, sec. 4). *Seattle Times*, however, does not support this claim. There the Supreme Court stated:

> "As in all civil litigation, petitioners gained the informa-

tion they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. ***

Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, [citation] and, in general, they are conducted in private as a matter of modern practice. [Citation.] Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (*Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 32-33, 81 L. Ed. 2d 17, 26-27, 104 S. Ct. 2199, 2207-08.)

The court concluded that "where, as in this case, a protective order is entered on a showing of good cause ***, is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." 467 U.S. 20, 37, 81 L. Ed. 2d 17, 29, 104 S. Ct. 2199, 2208.

For the reasons given, the plaintiff's motion for a supervisory order to vacate the protective order is denied.

*Motion denied.*

JUSTICE SIMON took no part in the consideration or decision of this case.