(No. 64223)

THE PEOPLE *ex rel.* FRED FOREMAN, State's Attorney, Petitioner, v. WILLIAM R. NASH, Justice of the Appellate Court, *et al.*, Respondents.

*Opinion filed September 21, 1987.*

CUNNINGHAM, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Fred L. Foreman, State's Attorney, of Waukegan (John X. Breslin and Howard R. Wertz, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Steven Clark, Deputy Defender, and Sue Augustus, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for respondents.

JUSTICE WARD delivered the opinion of the court:

Pursuant to Supreme Court Rule 381 (107 Ill. 2d R. 381), the People, on behalf of Fred Foreman, State's Attorney of Lake County, filed a motion for leave to file a

petition for an original writ of *mandamus* or, in the alternative, for a supervisory order directed to respondents, Honorable William R. Nash, Honorable Philip G. Reinhard, and Honorable George W. Unverzagt, justices of the Appellate Court, Second District; Honorable Lawrence D. Inglis, judge of the circuit court of Lake County; and Steven F. Palmer, defendant herein. We allowed the motion to file the petition.

In the circuit court of Lake County, defendant was charged with murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—1 *et seq.*) and, after a jury trial, was found guilty but mentally ill on both charges. The defendant was sentenced to an extended term of natural life imprisonment for murder, and his conviction for armed violence was vacated on the motion of the State. On appeal, the appellate court reversed and remanded for an entry of judgment of not guilty by reason of insanity. (*People v. Palmer* (1985), 139 Ill. App. 3d 966.) When the mandate issued to the circuit court, the People moved to reinstate the original sentence or, in the alternative, to set the case for retrial on the basis that the appellate court's order exceeded its authority and was, therefore, void. Upon denial of the motion, the People applied to this court for leave to file a complaint for an original writ of *mandamus* directing the appellate court to vacate its judgment finding defendant not guilty by reason of insanity, for a writ of ·*mandamus* directing the circuit court to reinstate defendant's conviction, or, in the alternative, to set the matter for trial, and a writ of prohibition restraining the circuit court from entering a judgment of not guilty by reason of insanity and proceeding with the defendant's discharge. The facts are adequately stated in the opinion of the appellate court and will only be restated here to the extent necessary to discuss the issues.

It is undisputed that on December 28, 1983, defendant stabbed 14-year-old Thomas Degen, Jr., in the back and neck while standing in line at a McDonald's restaurant in Waukegan. Degen subsequently died from his injuries. After the stabbing, defendant ran to a nearby bowling alley and exhibited bizarre behavior until the police arrived. According to the officers, defendant did not appear to be under the influence of drugs or alcohol. Extensive testimony by both experts and laypersons was presented with regard to defendant's past and present mental condition; in sum, defendant had exhibited extremely bizarre behavior from the time he was 17 years old, when defendant was diagnosed an adolescent schizophrenic and received medication, therapy, and was regularly treated by private psychiatrists. Defendant's father also testified that defendant had tried cocaine and LSD in 1970, and marijuana later. Over the next several years, the defendant was treated for schizophrenia both as an inpatient and an outpatient at several hospitals and was still under medication at the time of Thomas Degen's stabbing. The record is replete with other instances of defendant's unusual conduct which are extensively discussed in the appellate court opinion and will not be restated here.

Defendant presented the expert testimony of Drs. Jang-June Chen and Leo Goldman, both psychiatrists, and Dr. Marshall Silverstein, a clinical psychologist. Drs. Chen and Goldman, who had both treated defendant prior to the present offense, testified that defendant was suffering from the disease schizophrenia, paranoid-type, that his psychosis was severe, that defendant was unable to distinguish right from wrong, and that defendant was unable to conform his conduct to the requirements of the law. Dr. Silverstein's testimony corroborated that of Drs. Chen and Goldman.

The People presented the expert testimony of Dr. Ronald Baron, a psychiatrist. Dr. Baron related that, in his opinion, defendant was faking. Dr. Baron did not agree that defendant was a paranoid schizophrenic. However, Dr. Baron could not unequivocally state whether or not defendant was a schizophrenic, and, as the appellate court commented, at many points his testimony was weak, self-contradictory, and speculative. Although Dr. Baron saw no evidence of psychosis at the time he examined defendant, he nevertheless concluded that defendant was "grossly psychotic" on the day of the stabbing, that defendant knew right from wrong, that defendant had the ability to conform his conduct to the requirements of the law, and that defendant was not mentally ill. More than likely, he observed, defendant suffered from drug-induced psychosis. There is no evidence in the record, however, that Dr. Baron physically examined defendant for any signs of drug usage, or that any laboratory tests for drug usage were administered to defendant.

Noting that defendant had an extensive history of severe mental illness, including more than 36 hospitalizations (10 within a year and a half prior to the offense), and was still being treated with antipsychotic medication at the time of the offense, the appellate court reversed, finding that "there was no real evidentiary conflict for the jury to resolve, because the testimony of the lay witnesses corroborated the defense experts' conclusions and Dr. Baron's testimony was weak and self-contradictory." (139 Ill. App. 3d 966, 973.) The court concluded that the People failed to refute the evidence of defendant's insanity, and that a reasonable doubt did remain as to that question, thus requiring a reversal and remandment for an entry of a judgment of not guilty by reason of insanity. 139 Ill. App. 3d 966, 974.

Before addressing the merits of the parties' contentions, we first examine whether writs of *mandamus* or prohibition, or supervisory orders would be appropriate remedies in this case.

The People contend that writs of *mandamus* and prohibition would be appropriate here. (*People ex rel. Daley v. Schreier* (1982), 92 Ill. 2d 271.) They argue that by reviewing the credibility of the witnesses and reweighing the evidence, the appellate court improperly invaded the province of the jury (*People v. Collins* (1985), 106 Ill. 2d 237), thus exceeding its jurisdiction. Even assuming, *arguendo*, that *mandamus* and prohibition would be inappropriate, the People urge, the relief requested still falls within the scope of this court's supervisory authority. (*People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552.) The People further maintain that the extraordinary remedy sought here should be granted because the matter is one of substantial public importance, that lack of guidance from this court will result in circumventing the People's right to retrial in future cases of weight-based reversal on appeal, and that its present motion is one of last resort.

Defendant contends that the issuance of writs of *mandamus* or prohibition or a supervisory order is inappropriate because the issues involved are neither of compelling importance to the administration of justice (*People ex rel. Carey v. White* (1976), 65 Ill. 2d 193) nor necessitate the restraint of an inferior tribunal from acting outside its jurisdiction (*People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108). Furthermore, defendant argues, since the People have exhausted their appellate remedies by raising the present issues in a petition for rehearing in the appellate court and in a petition for leave to appeal in this court, both of which were denied, the present motion is merely an unprecedented attempt to file a second petition for leave to

appeal, the granting of which would open the floodgates to every future unsuccessful litigant to attempt the same and circumvent the rules of this court with regard to appellate procedure. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300.) Defendant also contends that the relief requested by the People—that this court compel the appellate court to vacate its December 31, 1985, order and direct the circuit court to reinstate his conviction—is inappropriate given that respondent had raised four issues on appeal, only one of which, that of reasonable doubt, was addressed by the appellate court. Even if this court should find that the appellate court incorrectly weighed the evidence, defendant submits, it should order the appellate court to review the evidence under the sufficiency standard of review rather than to reinstate his conviction.

Article VI, section 4(a), of the Illinois Constitution of 1970 confers upon this court "original jurisdiction in *** mandamus, prohibition *** and as may be necessary to the complete determination of any case on review." (Ill. Const. 1970, art. VI, sec. 4(a); *Madden v. Cronson* (1986), 114 Ill. 2d 504, 511.) Writs of *mandamus* and prohibition are extraordinary remedies, having traditionally been used to compel as a matter of public right an inferior tribunal to perform purely ministerial duties "where no exercise of discretion *** is involved." (*Madden v. Cronson* (1986), 114 Ill. 2d 504, 514.) As we stated in *People ex rel. Barrett v. Shurtleff* (1933), 353 Ill. 248, 259-60:

> "It is not the office of the writ of *mandamus* to review the orders, judgments or decrees of courts for error in their rendition or to correct, direct or control the action of a judge in any matter which he has jurisdiction to decide. For mere error, however gross or manifest, the remedy is an appeal or writ of error, and the writ of

*mandamus* will not lie for its correction if the court has jurisdiction of the subject matter and the parties."

Likewise, a writ of prohibition may be used to "prevent a judge from acting where he has no jurisdiction to act or to prevent a judicial act which is beyond the scope of a judge's legitimate jurisdictional authority." (*Daley v. Hett* (1986), 113 Ill. 2d 75, 80.) However, original actions of *mandamus* and prohibition or supervisory orders may not be used to circumvent the normal appellate process (*Moore v. Strayhorn* (1986), 114 Ill. 2d 538, 540), nor may *mandamus* be used as a substitute for appeal (*People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 523). An exception to this rule is where the question is "of sufficient importance to the administration of justice" (*People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 16-17) such that "this court in its administrative and supervisory capacity may consider the issuance of a writ of *mandamus* though all of the normal criteria for the writ's issuance do not appear" (77 Ill. 2d 12, 16).

In *Moore v. Strayhorn* (1986), 114 Ill. 2d 538, the defendant applied to this court for leave to file a petition for an original writ of *mandamus* or prohibition or supervisory order directing the circuit court to grant him credit for time served in jail prior to appealing his sentence. We concluded that because the defendant "should have been left to his alternative remedy of appealing *** to our appellate court" (114 Ill. 2d 538, 540), leave to file his complaint for *mandamus* or prohibition or supervisory order was "improvidently granted" (114 Ill. 2d 538, 540). We further stated that defendant's filing his petition without first appealing to the appellate court constituted an attempt to circumvent the normal appellate process. (114 Ill. 2d 538, 540.) Nevertheless, we addressed the merits of defendant's contentions on the ba-

sis of judicial economy and because defendant's time to appeal had already expired. 114 Ill. 2d 538, 540.

Here, counsel for the People conceded during oral argument that this matter has already been heard by the appellate court, that a petition in that court for rehearing was filed and denied, and that the People filed a petition for leave to appeal in this court, which was also denied. Although the People's counsel admitted that awarding *mandamus* would, in essence, allow an additional opportunity to appeal, he nevertheless contended that, because the appellate court's judgment was void for lack of jurisdiction, *mandamus* is proper.

We conclude that *Moore v. Strayhorn* is controlling. Clearly, the People have had three opportunities to present arguments before higher tribunals: to the appellate court upon direct appeal, to the appellate court upon petition for rehearing, and to this court upon petition for leave to appeal. An extraordinary remedy such as a writ of *mandamus* or a writ of prohibition should not be used as a substitute for another appeal. Permitting this would, as defendant points out, encourage parties who have appealed to the appellate court, then been denied rehearing and also leave to appeal to this court, to again ask this court to review their cause. This would result in a flood of improper requests for writs of *mandamus*.

Finally, we do not consider that the questions as presented here are of such importance to the administration of justice that they necessitate this court's exercise of its supervisory authority. Therefore, the issuance of a writ of *mandamus* or prohibition or of a supervisory order would not be appropriate.

We need not reach the merits of the parties' respective arguments since we conclude that the People's motion was improvidently granted. We hold only that, in this case, a writ of *mandamus* or prohibition or a supervisory order is not an appropriate remedy because it

would in effect constitute an additional appeal to which the People are not entitled under the rules of this court.

*Writs denied; Motion for supervisory order denied.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.